# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| CHARLES C.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil No. 22-6542 (RMB) <br><br> **OPINION** |

**APPEARANCES:**

BROSS & FRANKEL, P.A.
By: Jennifer L. Stonage, Esq.
725 Kenilworth Avenue
Cherry Hill, New Jersey 08002

   *On behalf of Plaintiff*

SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
By: Heather A. Benderson, Esq.
6401 Security Boulevard
Baltimore, Maryland 21235

   *On behalf of Defendant*

---

[1] Due to the significant privacy concerns in Social Security cases, any non-governmental party will be identified and referenced solely by first name and last initial in opinions issued in Social Security cases in the United States District Court for the District of New Jersey. *See* D.N.J. Standing Order 2021-10.

**RENÉE MARIE BUMB, Chief United States District Judge:**

This matter comes before the Court upon an appeal filed by Plaintiff Charles C. ("**Plaintiff**") seeking judicial review of a final determination of the Commissioner of the Social Security Administration (the "**Commissioner**" and the "**SSA**," respectively) pursuant to 42 U.S.C. § 405(g).  In its decision, the SSA determined that Plaintiff was no longer disabled based on medical improvement, and reduced severity, of a listed impairment.  Plaintiff challenged that determination through the administrative process, and in a series of decisions, an administrative law judge concluded that Plaintiff's disability ceased on October 6, 2014, and that he had not become disabled thereafter.  Because Plaintiff has pointed to no legitimate reason to disturb that determination, the Court must **AFFIRM** the administrative law judge's decision, which it does without oral argument pursuant to Local Civil Rule 78.1.

I.   BACKGROUND

On December 19, 2008, Plaintiff applied for Social Security disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act (the "**Act**"). [Docket No. 3 (Administrative Record ("**R.**"), at 153.] The SSA determined that Plaintiff was disabled within the meaning of the Act as of February 6, 2008, principally because his asthma met the medical criteria listed in Section 3.02(A) of 20 C.F.R. Part 404, Subpart P, Appendix 1—in other words, it was a "severe" impairment.  [R. at 155.]  (The most recent favorable medical decision finding that Plaintiff was disabled is dated June 28, 2009 (the "comparison point

2

decision") [R. at 17].) Later, the SSA undertook a continuing disability review, and on October 6, 2014, it concluded that Plaintiff's period of disability ceased due to medical improvement, and reduced severity, of his asthma. [R. at 153.] Plaintiff challenged that determination, and the SSA affirmed the cessation decision in a reconsideration order on October 12, 2016. [R. at 153.] Thereafter, Plaintiff timely filed a request for a hearing before an administrative law judge ("**ALJ**"). [R. at 15.]

Lisa Hibner Olson, an ALJ, held hearings on January 9 and November 30, 2018. [R. at 153.] In her initial decision, she determined that Plaintiff's disability in fact ended on October 6, 2014. [R. at 167.] Plaintiff appealed the ALJ's decision before the Appeals Council. [R. at 15.] It remanded and directed the ALJ to provide Plaintiff with the opportunity to address certain post-hearing medical evidence and to consider Plaintiff's eligibility for disability benefits through December 31, 2019, Plaintiff's date last insured under the Act. [R. at 15.]

On May 4, 2021, the ALJ held a telephone hearing due to the COVID-19 Pandemic. [R. at 15.] John Bopp, an impartial vocational expert ("**VE**"), appeared and provided testimony. [R. at 15.] Plaintiff was represented by Richard L. Frankel and Elizabeth Berenato, Esqs. [R. at 15.]

On May 27, 2021, the ALJ issued her supplemental decision, finding that Plaintiff's disability ceased on October 6, 2014 and that Plaintiff had not become disabled again after that date. [R. at 15–32.] Plaintiff requested Appeals Council review of that decision on August 2, 2021. [R. at 7–11.] That request was denied by the Appeals Council on September 8, 2022, [R. at 1–6], rendering the ALJ's decision

final. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). On November 9, 2022, Plaintiff sought this Court's review pursuant to 42 U.S.C. § 405(g). [Compl., Docket No. 1.]

## II.     LEGAL STANDARDS

### A.     Establishing Disability under the Social Security Act.

Every qualifying individual who is under a "disability" is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). The term "disability" means, in most cases, an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). "A claimant is considered unable to engage in any substantial activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.' " *Plummer v. Apfel*, 186 F.3d 422, 427–28 (3d Cir. 1999) (quoting 42 U.S.C. § 423(d)(2)(A)). To determine whether a claimant is under a disability in the first instance, the SSA works through a now familiar five-step, sequential analysis. *See Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (setting forth the SSA's applicable regulations for determining whether a claimant is under a disability). The SSA's prior analysis is not at issue here.

4

## B. The SSA's Periodic Review of Entitlement to Disability Benefits.

After the SSA determines that a claimant is under a disability, it is required to periodically review whether the disability benefits recipient remains entitled to such benefits. 42 U.S.C. § 423(f)(1)(A); 20 C.F.R. § 404.1594(a). When reviewing a claimant's entitlement to continue receiving benefits, the SSA must determine whether there has been any "medical improvement" in the claimant's impairments such that the claimant is capable of working. 20 C.F.R. § 404.1594(a). "Medical improvement" is defined as "any decrease in the medical severity" of the claimant's impairments "at the time of the most recent favorable medical decision" and is based on "improvement in the symptoms, signs, and/or laboratory findings associated with" the claimant's impairments. *Id.* § 404.1594(b)(1). The ALJ thus compares the current medical severity of the claimant's applicable impairment(s) to the medical severity of that impairment(s) at the time of the comparison point decision. *Id.* § 404.1594(b)(7); *see also id.* § 404.1594(c)(1).

The SSA may terminate a claimant's disability benefits if it concludes, by substantial evidence, that the claimant is no longer experiencing the physical or mental impairment that rendered him disabled because of medical improvement in his impairment or combination of impairments and the claimant is now capable of engaging in substantial gainful activity. *Id.* § 404.1594(a) and (b)(3); 42 U.S.C. § 423(f)(1). The SSA considers a claimant's ability to engage in substantial gainful activity by using the "new symptoms, signs[,] and laboratory findings to make an objective assessment of [the claimant's] functional capacity to do basic work activities

or residual functional capacity [("**RFC**")] and [ ] will consider [the claimant's] vocational factors." 20 C.F.R. § 404.1594(b)(5) (citing *id.* §§ 404.1545 through 404.1569) (defined term added).

The Commissioner has promulgated the following set of eight evaluation questions when considering whether a claimant remains disabled:

> (1) Are you engaging in substantial gainful activity? If you are . . . , we will find disability to have ended . . . .
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.
>
> (3) If you do not, has there been medical improvement as defined in [20 C.F.R. § 404.1594(b)(1)]? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)
>
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with [20 C.F.R. § 404.1594(b)(1) through (b)(4)]; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).
>
> (5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in [20 C.F.R. § 404.1594(d) and (e)] apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

6

>(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.
>
>(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.
>
>(8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment made under paragraph (f)(7) of this section and your age, education, and past work experience . . . . If you can, we will find that your disability has ended. If you cannot, we will find that your disability continues.

20 C.F.R. § 404.1594(f)(1)–(8). If the claimant introduces evidence that his condition remained the same at it was in the earlier comparison point decision, the burden shifts to the SSA to present evidence that there has been an improvement in the claimant's medical condition enabling substantial gainful activity consistent with the individual's RFC. *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 308 (3d Cir. 2012) (citations omitted). In other words, a claimant enjoys a presumption of continuing disability by introducing evidence that the disabling condition continues. *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237–38 (3d Cir. 1983). The burden then shifts to the SSA to establish that

7

there has been sufficient medical improvement in the claimant's condition to allow the claimant to work. *Keegan v. Heckler*, 744 F.2d 972, 975 (3d Cir. 1984) (citing *Kuzmin*, 714 F.2d at 1237).

### C. The District Court's Standard of Review.

When reviewing a final decision of an ALJ regarding a claim for disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 372 (3d Cir. 2009). This threshold for evidentiary sufficiency is "not high." *Biestek v. Beryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019). It is an extremely deferential standard. A district court may not overturn an ALJ's decision simply because it might have reached a different conclusion. *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

In addition to the "substantial evidence" inquiry, the court must also ensure that the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445,

447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Hess*, 931 F.3d at 208 n.10 (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011)).

After reviewing the entire administrative record, a district court may affirm, modify, or reverse the decision of the ALJ with or without remand to the Commissioner for rehearing. 42 U.S.C. § 405(g); *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

### III.   THE ALJ'S DECISION

In her May 27, 2021 decision, the ALJ determined that Plaintiff's disability ended on October 6, 2014 and that Plaintiff did not become disabled again through December 31, 2019, the date he was last insured under the Act. [R. at 16.] In forming that conclusion, the ALJ considered the applicable eight-step evaluation process for whether a disability benefits recipient remains disabled. [R. at 16–32.] She adopted the following findings in support of her determination:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from June 28, 2009 (the date of the comparison point decision) through the date of the ALJ's decision. [R. at 17.]

At step two, the ALJ determined that Plaintiff suffered from the same medically determinable impairments as identified in the prior comparison point decision: asthma, chronic sinusitis, ear infections, epilepsy, and a generalized anxiety disorder. [R. at 17.] She found that Plaintiff had not developed any additional impairments after the comparison point decision. [R. at 17.] The ALJ also determined that Plaintiff did

9

not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 17.]

At step three, the ALJ concluded that Plaintiff had experienced "medical improvement" within the meaning of 20 C.F.R. § 404.1594(b)(1). [R. at 21.] At the time of the comparison point decision, Plaintiff's asthma met the listing severity identified in Section 3.02(A) of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d)); however, the ALJ found that, as of October 6, 2014, Plaintiff's pulmonary functions had improved and his respiratory impairment—asthma—had become less severe. [R. at 17–18, 21.] Specifically, the ALJ noted that Plaintiff's forced vital capacity (FVC) (a measure of respiratory strength) showed results within the "normal range." [R. at 21.]

At step four, the ALJ found that the medical improvement related to Plaintiff's ability to work because, as of October 6, 2014, "the claimant no longer had an impairment or combination of impairments that met or medically equaled the same listing[] that was mas met at the time of the" comparison point decision. [R. at 21 (citing 20 C.F.R. § 404.1594(c)(3)(i)).] Accordingly, the ALJ determined that there had been an increase in Plaintiff's RFC by definition, as Plaintiff was determined to be disabled based on the presence of a "listed" impairment at the time of the comparison point decision (when an RFC was not assessed). She thus proceeded to step six. *See* 20 C.F.R. § 404.1594(f)(4).

At step six, the ALJ considered "whether all [of Plaintiff's] current impairments in combination are severe," *see* 20 C.F.R. § 404.1594(f)(6), and determined that, since October 6, 2014, Plaintiff "has continued to have a severe impairment or combination of impairments." [R. at 21.] This has caused "more than minimal limitation in [Plaintiff's] ability to perform basic work activities." [R. at 21.] She thus proceeded to step seven. 20 C.F.R. § 404.1594(f)(6).

As step seven, the ALJ assessed Plaintiff's RFC based on his current impairments to determine whether Plaintiff could perform past relevant work. [R. at 22.] To do so, the ALJ considered the record evidence and "the limitations and restrictions imposed by the combined effects of all [of Plaintiff's] medically determinable impairments," finding that Plaintiff had the RFC:

> to perform light work as defined in 20 [§] C.F.R. 404.1567(b) except he can occasionally climb ramps or stairs. He can never climb ladders, ropes or scaffolds. He can occasionally stoop, balance kneel, crouch and crawl. He can have no exposure to extreme heat or cold, wetness, or humidity, irritants such as fumes, odors, dust and gases, poorly ventilated areas, exposure to chemicals. He can have no exposure to workplace hazards such as moving machinery or unprotected heights. Work is limited to simple, routine tasks. Work is to be in a low stress job, defined as having only occasional decision making and only occasional changes in the work setting. Work is to be with occasional judgment required on the job.

[R. at 22, 22–30.] After identifying Plaintiff's RFC, the ALJ found that he was incapable of performing past relevant work as a grinding and polishing laborer (DOT 705.687-014) and a stock clerk (DOT 299.367-014). [R. at 30.] Because the ALJ found that Plaintiff could not perform past relevant work based on his RFC, she proceeded to step eight. 20 C.F.R. § 404.1594(f)(7).

11

At step eight, the ALJ determined that Plaintiff could have performed other work based on his RFC and his age, education, and past work experience. [R. at 30–31.] On October 6, 2014, Plaintiff was a "younger individual age 18–49." [R. at 30.] He attained the age of 50 on February 10, 2017. [R. at 31.] Plaintiff has at least a high school education. [R. at 31.] The ALJ determined that Plaintiff's prior work experience, and transferable job skills, were not material to the determination of disability. [R. at 31.] In light of these facts, the ALJ concluded that there were jobs in the national economy that Plaintiff has been capable of performing, namely sales attendant ((DOT) 299.677-010), collator operator ((DOT) 208.685-010), and marker ((DOT) 209.587-034). [R. at 30–31.] Accordingly, the ALJ concluded that Plaintiff's disability ended on October 6, 2014 and that he had not become disabled thereafter. [R. at 32.] On this basis, Plaintiff's disability benefits were terminated.

## IV. DISCUSSION

Plaintiff raises two arguments on appeal. [Docket No. 11, at 15–21 ("**Pl.'s Br.**").] First, Plaintiff argues that the ALJ failed to consider the combined impact of Plaintiff's physical and mental impairments in her RFC determination. [*Id.* at 15–18.] He does not contest that he experienced medical improvement of his respiratory condition and can no longer meet the severity of Section 3.02(A) of 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.* at 16 ("Plaintiff does not disagree that in the many clinical observations of the Plaintiff's significant respiratory distress that the same does not precisely meet a medical listing[.]").] However, according to Plaintiff, the ALJ considered his asthma and anxiety separately and independently, and thus erroneously

concluded that Plaintiff had an RFC to perform light work without accommodations for Plaintiff's respiratory problems and panic attacks. [*Id.* at 18.] Plaintiff submits that proper consideration of the combined effect of these impairments would have resulted in a finding of disability. [*Id.*] Second, and relatedly, Plaintiff argues that the ALJ failed to adequately explain her RFC determination in light of Plaintiff's severe combination of impairments and the medical opinions, which arguably support a "significantly more disabling RFC." [*Id.* at 18–21.]

In response, Defendant contends that Plaintiff has not identified a legitimate basis to challenge the ALJ's decision. [Docket No. 12, at 11–20 ("**Def.'s Opp'n**").] Defendant argues that the ALJ considered the combined effect of Plaintiff's impairments, identified functional limitations consistent with the record evidence, and adequately explained herself in both regards. [*Id.*] Thus, Defendant urges the Court to affirm the ALJ's decision because it is supported by substantial evidence.

These arguments do not merit especially lengthy discussion. The questions presented are, essentially, one in the same. At their core, they ask whether the ALJ correctly analyzed the record evidence in determining Plaintiff's RFC. By considering this question, the Court necessarily will answer whether the ALJ sufficiently explained her determination.[2]

---

[2] To the extent that Plaintiff seeks for this Court to weigh the medical opinions and other evidence of record to determine whether Plaintiff's RFC should have been more disabling, [*see* Pl.'s Br. 21 ("It is clear that a sedentary RFC is supported")], Plaintiff misunderstands this Court's role on appeal. "The court may neither reweigh the evidence[] nor . . . reverse the [ALJ] merely because [the court] would have decided

13

A claimant's RFC is the "most [he] can do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). This determination is the sole responsibility of the ALJ, not treating physicians. *Breen v. Comm'r of Soc. Sec.*, 504 F. App'x 96, 99 (3d Cir. 2012) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). When determining the claimant's RFC, the ALJ must include only "credibly established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.' " *Id.* (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Ultimately, the ALJ must give "some indication" of the evidence that she rejects and her "reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). While the ALJ need not discuss "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004), she must consider all relevant evidence and provide a sufficient discussion for the court to engage in a meaningful review, *Fargnoli v. Massanari*, 247 F.3d 34, 41–42 (3d Cir. 2001).

In determining a claimant's RFC, the ALJ is required to assess the combined effect of the claimant's impairments when multiple conditions ail him, 20 C.F.R. § 404.1523(c), because each impairment may not limit the claimant's ability to engage in substantial gainful activity on its own, *see* SSR 96-8P, 1996 WL 374184 (explaining

---

the claim differently." *Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990); *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

that when assessing the claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,' " because an impairment "standing alone" might not foreclose the ability to do "basic work activities" but may when considered in association with limitations due to "other impairments"). This proposition is well-established. *See Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971) (citation omitted) ("[W]here there are several illnesses suffered simultaneously by the claimant, the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits.").

Here, the ALJ clearly considered the combined effect of Plaintiff's physical and mental impairments when determining the "credibly established limitations" of his RFC. *See Rutherford*, 399 F.3d at 554; 20 C.F.R. § 404.1523(c). In making this determination, the ALJ specifically considered Plaintiff's asthma and anxiety and the relationship between the two. The record evidence supports the ALJ's decision.

To begin her analysis, the ALJ noted Plaintiff's testimony that he has "difficulty breathing, both while walking and while at rest," and "feels fatigued." [R. at 22.] She also recited his testimony that, because he has symptoms of asthma every day, "he feels depressed and has panic attacks," leading him to stay at home near his nebulizer. [R. at 22–23, 26.] After considering the record evidence as a whole, the ALJ determined that Plaintiff's impairments could reasonably be expected to have produced the symptoms that Plaintiff alleged, but she discounted his statements concerning the intensity, persistence, and limiting effects of these symptoms because

15

they were inconsistent with the objective medical evidence and other evidence of record. [R. at 27.]

Importantly, the ALJ determined that Plaintiff experienced medical improvement of his pulmonary functions. She cited medical evidence from, for instance, Dr. Donald Dvorin demonstrating that Plaintiff's FVC values began to improve in 2013, and progress notes indicating that Plaintiff's lungs were "clear," "with no wheezes or rhonchi," and "with good bilateral air movement." [R. at 23.] This improved pulmonary function continued in 2016 and 2017, leading to a July 7, 2017 report in which Dr. Dvorin identified Plaintiff's condition as "stable" when on his asthma medications. [R. at 23–24.] Additionally, the ALJ noted that Plaintiff continued smoking tobacco despite his asthmatic condition and engaged in qualifying for a black belt in karate. [R. at 25, 27.] These facts revealed, the ALJ explained, that Plaintiff could engage in a greater degree of physical activity, and indicated greater pulmonary functioning, than alleged. [R. at 27.] Ultimately, the evidence reflected a diminished severity of Plaintiff's respiratory impairment. [R. at 25–27.]

Similarly, the ALJ considered the medical evidence concerning Plaintiff's anxiety and concluded that "the record supported restrictions, yet not to the degree alleged by the claimant." [R. at 25.] The Court need not recount all the relevant record evidence that the ALJ discussed. She found, for instance, that Plaintiff had been diagnosed with a generalized anxiety disorder by Dr. Laurie Deerfield, a psychiatrist who has seen Plaintiff since 2006 and treated his anxiety with a variety of medications, including Clonazepam. [R. at 25.] Her progress notes show ongoing medication

16

management and some remission of Plaintiff's condition, and that he was "doing well." [R. at 25, 30.] On March 28, 2018, Dr. Lewis Lazarus, Ph.D., examined Plaintiff at the request of the SSA and reported that Plaintiff felt depressed as a result of his physical condition. [R. at 26.] Dr. Lazarus confirmed that Plaintiff suffered from anxiety but indicated positive response to his medication.[3] [R. at 26.]

     The ALJ also considered the opinion evidence. Take, for example, the ALJ's discussion of the opinions of Dr. Deerfield. Plaintiff argues that the ALJ's rationale for rejecting such evidence is erroneous. [Pl.'s Br. 18–19.] In her January 5, 2021 assessment of Plaintiff, Dr. Deerfield reported that Plaintiff was stable on medication but identified marked restrictions on three out four "B criteria." [R. at 29.] The ALJ assigned less weight to this assessment because she determined that it was internally inconsistent and not supported by the treating records. [R. at 29.] The Court finds no error in this rationale, as her 2018 progress notes do suggest that marked restrictions would be unwarranted if Plaintiff was stable on his anxiety medications. Plaintiff simply disagrees with the ALJ's conclusion. Her explanation is sufficient. *See Cotter*, 642 F.2d at 705 (stating that the ALJ must specify the reasons forming the basis for the decision with sufficient detail to provide for meaningful judicial review, including "an

---

[3] Plaintiff appears to suggest that the ALJ erred by omitting from her discussion of Dr. Lazarus's March 28, 2018 findings that Plaintiff's speech was "very wheezy" and that he exhibited apprehension about being away from his nebulizer, among other details. [Pl.'s Br. 16.] But the ALJ did recite Dr. Lazarus's note that Plaintiff prefers to stay home and close to his nebulizer and that Plaintiff feels anxious because of his breathing issues. [R. at 26.] The ALJ need not use magic words when analyzing the record evidence. The Court can discern no error in the ALJ's treatment of Dr. Lazarus's medical notes and opinions.

expression of the evidence s/he considered which supports the result" and "some indication of the evidence which was rejected").

Furthermore, in a January 26, 2021 statement, Dr. Deerfield opines that Plaintiff cannot maintain a normal work schedule due to the combination of his breathing issues and anxiety. [R. at 30.] She noted that he has good days and bad days, so his schedule is unpredictable. [R. at 30.] She also believes that his anxiety medications can cause drowsiness and impair cognition, frustrating his ability to work. [R. at 30.] However, the ALJ again explained that this opinion was inconsistent with Dr. Deerfield's earlier progress notes as well as the pulmonary testing records. [R. at 25, 30.] As in the prior paragraph, to the extent Plaintiff is challenging this analysis as well, the Court identifies no error in the ALJ's rationale because it can discern the basis for the ALJ's decision to assign little weight to Dr. Deerfield's opinion that it was nearly impossible for Plaintiff to work. *See Cotter*, 642 F.2d at 705.[4]

Thus, it is clear from the foregoing discussion that the ALJ was aware of—and considered—the combined effect of Plaintiff's physical and mental impairments when determining his RFC. *See Hagans*, 694 F.3d at 308 (rejecting argument that that ALJ failed to properly consider mental impairment in combination with other impairments when the ALJ specifically discussed claimant's impairments in determining the type

---

[4] Plaintiff also appears to dispute the weight the ALJ gave to the opinions of Dr. Dvorin and Dr. Sarmiento. [Pl.'s Br. 17–18, 20–21.] But again, the ALJ explained her rationale for according partial weight to such opinions, and Plaintiff has failed to identify a reason to find otherwise. Because the Court can ascertain the ALJ's reasoning, it can determine that substantial evidence supports her conclusion. *See Fargnoli*, 247 F.3d at 43–44.

of work he could perform). If there were any reasonable doubt based on her analysis, the ALJ also explicitly indicated that she considered the combined effect of Plaintiff's impairments: "as required by SSR 96-8p, the residual functional capacity has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments." [R. at 22.] In such circumstances, there is simply no legitimate reason to disbelieve her. *See Samperi v. Berryhill*, 2019 WL 1418131, at *8 (D.N.J. Mar. 29, 2019) (rejecting argument that ALJ committed legal error by failing to consider combined effect of individual impairments because the ALJ "explicitly indicates that he has done so, and there is 'no reason not to believe him' ") (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008)).

Finally, for much the same reason, Plaintiff has failed to convince the Court that the ALJ's RFC determination improperly accounts for Plaintiff's impairments. Substantial evidence supports the ALJ's determination. She discussed the relevant record evidence and included only the "credibly established limitations" associated with Plaintiff's impairments. She permissibly concluded that Plaintiff was capable of performing a limited range of light work, including restrictions to accommodate his respiratory problems—"He can have no exposure to . . . irritants such as fumes, odors, dust and gases"—and mental impairments—"Work is to be in a low stress job." [R. at 22.] Where the ALJ includes all "credibly established limitations," there is no error concerning the RFC determination. *See Rocshon D.G. v. Kiljakazi*, 2023 WL 1750326, at *5 (D.N.J. Feb. 3, 2023) (citation omitted).

19

In short, a review of the decision reveals that the ALJ correctly employed the eight-step evaluation framework identified in 20 C.F.R. § 404.1594(f) to determine whether Plaintiff's disability benefits should have been terminated. The ALJ concluded that Plaintiff experienced a medical improvement, and reduced severity, of his respiratory impairment. The reduction in severity of Plaintiff's asthma accordingly impacted Plaintiff's RFC. Discussing the medical and other evidence, the ALJ appropriately determined that Plaintiff could engage in "light work," subject to certain restrictions identified above. [R. at 22.] While he could no longer perform past relevant work, he was capable of performing other work in the national economy. [R. at 30–32.] Therefore, the ALJ determined that Plaintiff has not been disabled since October 6, 2014. [R. at 32.] Because the Court determines that these findings are amply supported by substantial evidence, *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999), the Court concludes that Plaintiff's disability benefits were permissibly curtailed, 20 C.F.R. § 1594(a); 42 U.S.C. § 423(f)(1).

## V.   CONCLUSION

For the reasons expressed above, the Court will **AFFIRM** the ALJ's decision. An accompanying Order shall issue.

**October 18, 2023**  
Date

s/Renée Marie Bumb  
RENÉE MARIE BUMB  
Chief United States District Judge